THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAWRENCE DANIELS, Defendant-Appellant.

Fifth District   No. 5—86—0442

Opinion filed December 7, 1987.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Wendy B. Porter, all of the State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE CALVO delivered the opinion of the court:

Defendant, Lawrence Daniels, was charged by information with unlawful use of weapons by a felon. (Ill. Rev. Stat. 1985, ch. 38, par. 24—1.1(a).) A St. Clair County jury entered a verdict of guilty upon which judgment was entered. Defendant appeals, contending that the State improperly used peremptory challenges to exclude all six prospective black jurors from his jury venire. The pertinent facts are as follows.

On April 15, 1986, a jury of 12, all white, was selected to try the black defendant. The record indicates that the State exercised all seven of its peremptory challenges; six of these challenges were to black jurors. Defendant's prompt motion for a mistrial on the ground that the State had systematically excluded blacks from the jury venire was denied. Although the circuit court found that there were not enough relevant circumstances in the record to support a finding of systematic exclusion, it noted (1) that the State's use of peremptory challenges looked discriminatory, and (2) that in 10 out of the last 12 cases tried before the court the same problem had occurred.

On May 30, 1986, the assistant State's Attorney stated that it was practically impossible to reconstruct his reasons for excluding the

black jurors. Nevertheless, the trial court ordered the State to come forward with such reasons. At the defendant's sentencing hearing on June 24, 1986, the assistant State's Attorney gave the following reasons for excluding the black jurors: Juror Ingram was excluded because he was about the same age as defendant (defendant was 28, Ingram was 29), was unmarried, and had a sister who was an ex-convict. Juror Taylor, a 63-year-old widow with no children, was excluded because she had a "generally disinterested attitude." Juror Johnson was excluded because he was about the same age as defendant (27), unemployed, and because he was seated behind the defendant, with whom he appeared to sympathize. Juror Nash was excluded because she was 20 years old, single and unemployed. Juror Tolliver was excluded because she had previously worked with defendant's father and found him to be a believable man. Juror Davis was excluded because he agreed out loud with defense counsel's statement that everyone has a right to defend himself.

Defendant's argument against the propriety of the reasons the State gave for excluding the jurors was as follows: (1) that four of the white jurors, three of them male, were between the ages of 21 and 35; (2) that although the State's characterization of juror Ingram's background was true, the State left out the fact that Ingram was a crime victim; (3) that there was no indication in the record that juror Taylor was disinterested in the proceedings; (4) that juror Johnson had been recently employed in the area and that there was no evidence in the record that his sitting behind defendant made him sympathetic to defendant; and (5) that there was no indication in the record that juror Davis had agreed out loud with defense counsel. Defendant believed that any doubt as to the State's reasons should be resolved in defendant's favor because of the State's own admission that it was practically impossible to reconstruct its reasons for excluding particular jurors. The trial court ruled against defendant and defendant appeals.

■■ In *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, the United States Supreme Court held that a defendant may establish a *prima facie* case of purposeful discrimination in selection of a petit jury solely upon evidence concerning the exercise of peremptory challenges at his trial. To establish a *prima facie* case, the defendant must show (1) that he is a member of a cognizable racial group, and (2) that the prosecutor has used peremptory challenges to remove members of defendant's racial group from the jury venire. Although the defendant is entitled to rely upon a presumption that peremptory challenges allow those who wish to discriminate to do so,

the defendant must show that the facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude veniremen on the basis of race. (*Batson*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712; *People v. Chevalier* (1987), 159 Ill. App. 3d 341, 348-49, 512 N.E. 2d 1001, 1006.) Once the defendant makes a *prima facie* showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. *People v. Brown* (1987), 152 Ill. App. 3d 996, 1000, 505 N.E. 2d 397, 400.

■ We note that while the pattern of peremptory strikes against black jurors may give rise to an inference of discrimination, the trial court is in the best position to determine whether the circumstances surrounding such strikes justify a finding that they are being used in a racially discriminatory manner. (See *People v. Brown* (1987), 152 Ill. App. 3d 996, 1000, 505 N.E. 2d 397, 399-400.) In the instant case the trial court initially proceeded under pre-*Batson* law, which held that the defendant had to show a repeated pattern of discriminatory challenges in several juries rather than a *prima facie* showing based upon one jury venire. (See *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824.) Since the facts and circumstances known to the trial court at the time the jury was selected tend to raise the inference that the State's use of peremptory challenges was discriminatory, we must conclude that a *prima facie* showing of purposeful discrimination was made.

■ However, the State, at the behest of the trial court, did come forward and give racially neutral explanations for its exclusion of blacks from defendant's jury venire. Although the State had earlier stated that it would be practically impossible to reconstruct its reasons for excluding the jurors, the trial court knew this and still accepted the State's racially neutral explanations. After reviewing the content of the State's explanations, we conclude that the trial court properly found no purposeful discrimination on the part of the State in its use of peremptory challenges. The judgment of the circuit court of St. Clair County is therefore affirmed.

Affirmed.

KARNS, P.J., and WELCH, J., concur.